IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

GEORGE BRIAN SMITH, JR.
     Plaintiff

Civil Action No. _____

     versus

Judge

LOUISIANA NATIONAL BANK,
     Defendant.

Magistrate Judge

## COMPLAINT

NOW INTO COURT, by undersigned counsel, comes plaintiff, George Brian Smith, Jr. ("Smith") and alleges as follows for his complaint:

### Introduction

1.     Defendant, Louisiana National Bank ("LNB"), the former employer of plaintiff, Smith, seeks to restrict Smith's ability to earn a living and to restrict competition in markets for employees who provide financial services by trying to enforce purported restrictive covenants contained in an employee handbook. LNB's actions violate federal antitrust laws and Louisiana law. Smith seeks damages and injunctive relief to halt LNB's illegal actions.

### Parties

2.     Plaintiff Smith is an individual resident of Ruston, Louisiana.

3.     Defendant LNB is a nationally chartered bank with its principal place of business in Ruston, Louisiana.

### Jurisdiction & Venue

4.     The Court has jurisdiction of this action pursuant to 15 U.S.C. § 4 and 28 U.S.C. §§ 1332 and 1337 with regard to Smith's claims under 15 U.S.C. § 1 *et seq.* and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with regard to Smith's claims under Louisiana law.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because defendant is a

resident here and because a substantial part of the events giving rise to this action occurred here.

**Facts Common to All Counts**

6.      From 2002 through 2009, Smith worked at Community Trust Bank, now Origin

Bank, culminating in a position as assistant vice president.

7.      In 2009, Smith began working for LNB, then known as First National Bank, and

some of his customers from Community Trust Bank continued doing business with him at LNB.

8.      Smith did not solicit his former customers to come with him after he left

Community Trust Bank, but some customers simply preferred to continue working with him.

9.      In 2016, Smith became a senior vice president for commercial lending with LNB.

10.     In June 2021, Smith began working for b1BANK, and some of his customers

from LNB reached out to Smith, unsolicited, and expressed their full intent to move their

banking relationship to him at b1BANK.

11.     Smith did not solicit his former customers to come with him after he left LNB, but

some customers simply preferred to continue working with him.

12.     On June 23, 2021, LNB directed a letter to Smith, seeking to enforce purported

restrictive covenants in a 2011 employee handbook whose receipt Smith had acknowledged. (A

coy of that letter is attached as Exhibit "1" to this Complaint.)

13.     LNB's 2011 employee handbook provided, in pertinent part, that:

In consideration of the wages, salary and benefits paid to you by the Bank during your
employment, you agree upon the termination of your employment for any reason, and
for a period of twenty-four months from the date of termination, you shall not
participate in nor shall you assist any other person or entity in contacting, soliciting,
offering any financial services to or calling upon any person, company or entity, who
were or are customers of the Bank during your employment with the Bank and who are
seeking or requiring financial related services in the parishes of Bienville, Richland,
Union, Ouachita, Claiborne, and/or Lincoln. You also acknowledge that the Bank has,

and will during your employment with the Bank, devoted resources to assist you in developing and maintaining relationships with customers including but not limited to providing marketing, entertainment, locations, products, access to other Bank support staff and services all of which are integral to establishing its customer base. (Exhibit "1" this Complaint, at p. 3.)

14.    LNB's 2011 employee handbook further provided, in pertinent part, that:

The Bank also considers the team of officers and employees who provide services to its customers to be a valuable asset and part of the goodwill of the Bank. You agree that during your employment at the Bank and for a period of twenty-four months following your termination from employment with the Bank for any reason, without the prior written consent of Bank, you shall not hire, offer to hire, employ or solicit a Bank employee or officer to work at another financial institution, or employ any employee or officer of the Bank, and you shall not enter into business with any employee or officer of the Bank, whether as a joint venture, partnership, corporation or otherwise, which has a purpose of carrying on or engaging or participating in any business the same as or in competition with the Bank. (*Id.*)

15.    LNB's 2011 employee handbook also provided, in pertinent part, that:

I further acknowledge and agree that I will abide by all of the provisions of the Employee Handbook as modified by these changes, and that my failure to do so may result in disciplinary action including, but not limited to, termination of employment. (*Id.* at p. 4.)

16.    LNB's 2011 employee handbook further provided, in pertinent part, that:

I further acknowledge and understand that certain policies of the Bank may be modified, revised, and/or changed by the Bank, in its sole discretion, at any time and without prior notice and that the Bank's policies are not intended to and do not constitute a contract of employment. (*Id.* at p. 4.)

17.    Similarly, LNB's 2011 handbook stated, in pertinent part, that:

I further understand and acknowledge that the Bank reserves the right to terminate my employment at any time, with or without reason, and with or without notice. In this regard, my employment is "at will", and there is no guarantee of employment for any specific duration and there are no guarantees as to conditions of employment and/or benefits. (*Id.* at p. 4.)

## COUNT I: PER SE VIOLATION OF SECTION 1 OF THE SHERMAN ACT

18.    Smith restates and realleges the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

19.     LNB has sought to enforce provisions of its 2011 employee handbook as a purported contractual agreement with Smith.

20.     Those provisions are not enforceable as a contractual agreement.

21.     Nonetheless, if LNB is permitted to enforce those provisions (a result that Smith contends would be wrong), the effects would include preventing Smith from contacting customers for the purpose of providing any financial services and preventing Smith from working with any other former employees of LNB to provide any financial services.

22.     As a purported contractual agreement, the provisions of LNB's 2011 employee handbook at issue in this action constitute a naked restraint of trade in the market for labor in the financial services sector.

23.     With regard to restraining Smith from providing financial services to customers claimed by LNB, this naked restraint of trade would affect financial services workers in Ouachita, Claiborne, Lincoln, Bienville, Richland, and Union Parishes, but with regard to restraining Smith from working with any other LNB employees it would have no geographic limitation at all.

24.     No justification exists for LNB's naked effort to restrain trade: no sale of a business was involved, no alleged trade secrets are at issue, LNB provided no proprietary training to Smith, and some of the customers at issue came to LNB with Smith when Smith became an employee of LNB.

25.     LNB's effort to enforce these illegal restraints of trade constitutes a per se violation of section 1 of the Sherman Act, 15 U.S.C. § 1.

26.     LNB's actions threaten Smith with irreparable harm in the form of hampering his inability to earn a livelihood, damaging his business relationships with individual customers, and

restraining his ability to compete in the labor market to offer financial services, none of which can be remedied with monetary damages alone.

27.     Smith is entitled to injunctive relief to halt further anticompetitive conduct by LNB, pursuant to 15 U.S.C. § 26.

28.     LNB's anticompetitive actions also threaten monetary harm to Smith, restraining Smith from earning compensation as a participant in the otherwise competitive labor market for the financial services sector.

29.     That monetary harm to Smith flows directly from the anticompetitive efforts of LNB to use its 2011 employee handbook to restrain trade in the financial services sector's labor market, in which Smith is a participant.

30.     Smith is entitled to compensatory and treble damages against LNB for the losses that he is suffering, pursuant to 15 U.S.C. § 15.

31.     Smith is also entitled to costs and attorneys' fees in this action pursuant to 15 U.S.C. § 4304.

## COUNT II: DECLARATORY RELIEF

32.     Smith restates and realleges the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

33.     First, as a general matter, the provisions of an employee handbook do not constitute an enforceable contract under Louisiana law.

34.     LNB's 2011 employee handbook even says as much, specifically stating that "the Bank's policies are not intended to and do not constitute a contract of employment." (*See* Exhibit "1" to this Complaint, at p. 4.)

35.     Second, obligations of the type that LNB seeks to enforce against Smith through its 2011 employee handbook are illusory and simply do not exist.

36.     A document that can be unilaterally amended for any reason by one party is not a contract to which another party has consented.

37.     Third, even if LNB's 2011 employee handbook did establish some purported contractual obligation on the part of Smith (which is denied), no cause or consideration supports Smith's purported obligation.

38.     Louisiana law requires at least some cause or consideration in exchange for an employee's restrictive covenant, but LNB's 20111 employee handbook states no valid cause or consideration, relying instead upon "the wages, salary and benefits paid to you by the Bank during your employment" – items that by definition were provided solely for another reason.

39.     Fourth, even if LNB's 2011 employee handbook did establish some purported contractual obligation on the part of Smith (which is denied), the purported obligations are themselves too broad to be enforceable under La. R.S. 23:921.

40.     LNB's purported customer non-solicitation provision, for example, seeks to restrict Smith from providing any "financial services" to its customers, whether or not those services are offered by LNB.

41.     That restriction seeks to bar Smith from providing investment advice, selling securities, selling insurance, providing accounting services, or performing any of a host of economic activities that fall under the rubric of "financial services" but are not part of LNB's business.

42.     Further, LNB's 2011 employee handbook apparently contains no severability provision; even if it had one, the verbiage in the customer non-solicitation clause could not be salvaged by blue-penciling.

43.     Similarly, the lack of any geographic scope to LNB's purported restriction on working with other LNB employees renders it ineffective on its face as a non-competition provision under La.R.S. 23:921.

44.     These flaws and others make the purported restrictions contained in LNB's 2011 employee handbook legally unenforceable.

45.     Smith is therefore entitled to a ruling under La. R.S. 23:921, and either Louisiana Code of Civil Procedure article 1871 or 28 U.S.C. § 2201, declaring that the provisions of LNB's 2011 employee handbook that LNB seeks to enforce are not enforceable contractual obligations.

## COUNT III: WRONGFUL ACTS

46.     Smith restates and realleges the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

47.     LNB knew or should have known that the provisions of LNB's 2011 employee handbook were unenforceable.

48.     LNB's effort to enforce those obligations against Smith notwithstanding their evident lack of enforceability was negligent or intentionally wrongful.

49.     In addition, LNB is withholding payment of lump sums due to Smith under a deferred compensation plan.

50.     As a direct and proximate result of LNB's acts, including but not limited to LNB's negligent or wrongful efforts to enforce against Smith the unenforceable provisions of

LNB's 2011 employee handbook, Smith has suffered monetary damages, mental pain and suffering, stress, anxiety, hardship, and other losses.

51.     Smith is entitled to compensatory and general damages for LNB's negligent or wrongful conduct pursuant to Louisiana Civil Code articles 2315 and 2316.

52.     LNB's actions further threaten Smith with irreparable harm in the form of hampering his inability to earn a livelihood, damaging his business relationships with individual customers, and restraining his ability to compete in the labor market to offer financial services, none of which can be remedied with monetary damages alone.

53.     Smith is entitled to injunctive relief to halt such irreparable harm and to prevent any further irreparable harm to Smith.

## Jury Demand

54.     Trial by jury is requested for all matters so triable.

WHEREFORE, plaintiff, George Brian Smith, Jr., respectfully requests that his Complaint be granted, and that the Court enter judgment in his favor and against defendant, Louisiana National Bank, as follows:

(a) awarding him compensatory and treble damages in an amount to be proven at trial;

(b) awarding him general damages in an amount to be determined at trial;

(c) enjoining Louisiana National Bank preliminarily and permanently from seeking to enforce any purported obligations against him following termination of his employment with Louisiana National Bank;

(d) declaring any purported obligations set forth in Louisiana National Bank's 2011 employee handbook to be null, void, and unenforceable against him;

(e) awarding him interest from the date of judicial demand on all monetary damages;

(f) awarding him all attorneys' fees and costs that he has incurred in responding to the unwarranted actions of Louisiana National Bank, including but not limited to the costs and fees that he has incurred in bringing this action; and

(g) awarding him all other legal and equitable relief to which he may be entitled.

Dated:      September 21, 2021.

Respectfully submitted:

/s/ Stephen T. Perkins
D. Scott Rainwater (#30683)
Stephen T. Perkins, T.A. (# 21014)
TAYLOR, WELLONS, POLITZ & DUHÉ, APLC
1555 Poydras Street - Suite 2000
New Orleans, LA  70112
Telephone: 504-525-9888
Fax: 504-525-9899

*Attorneys for Plaintiff, George Brian Smith, Jr.*